## In re DOYLE & SON'S ESTATE.

### L. A. No. 693; February 5, 1900.

59 Pac. 993.

**Insolvency.**—Where, **Prior to Insolvency Proceedings Against a Firm,** the wife of a member, who was also a creditor, received a draft belonging to the firm in good faith, without intending to defraud other creditors, but to keep the money from being wasted by attachments, her surrender of the principal part of the money to the assignee after an action was brought by him against her therefor, but before judgment, was in time to entitle her to share in the dividends, as a creditor free from fraud, though she contested the assignee's right to the balance of the proceeds of the draft, which she had used for family purposes.

APPEAL from Superior Court, Los Angeles County.

Judicial accounting of Gregory Perkins, assignee of the firm of D. M. Doyle & Son, insolvents. From an order allowing the claim of Lizzie R. Doyle and from an order settling the assignee's account, he appeals. Affirmed.

Dillon & Dunning for appellant; Dyer & Potter for respondent.

CHIPMAN, C.—Appeal of the assignee from an order allowing respondent's claim against the insolvents' estate and an order settling the assignee's account. It appears that Doyle & Son borrowed from the wife of Doyle, Sr., the sum of $1,500 in January, 1897, part of which the firm invested in starting a grocery business in Los Angeles. The firm sold the entire stock and fixtures March 10, 1898, for $948.90; receiving at the time $200, and on March 17th the balance, $748.90. They paid to creditors the $200, and deposited in bank, to the credit of Doyle & Son, the $748.90. Within thirty days after the sale they drew out this money, and took a New York draft for the amount, payable to the order of Mrs. Doyle, and delivered it to her. The evidence is, to some extent, directed to the intention of the parties in this transaction. Without quoting from the testimony, it appears reasonably clear therefrom that the purpose of Doyle and wife was to keep the money from being wasted by attachment suits, and to hold it for an equitable distribution among all the creditors. This is apparently the view taken by the trial court in making the orders complained of, and finds support in the evidence. After Mrs. Doyle had secured possession of the draft, the creditors, March 24, 1898, began proceedings against Doyle & Son in involuntary insolvency, in which a receiver was appointed; and on the same day he brought an action against Mrs. Doyle and her husband, D. M. Doyle, to enjoin Mrs. Doyle from converting said draft into money, and for judgment against her for the delivery of the draft or its proceeds to the receiver. The court made the order enjoining Mrs. Doyle from transferring or negotiating the draft. A stipulation was entered into by the attorneys of the respective parties agreeing that the draft should be cashed, and the proceeds be deposited with the clerk of the court, "less the sum of one hundred and fifty dollars, . . . . to be paid to the said Lizzie R. Doyle; . . . . it being understood

that the payment of the said $150, . . . . and the payment of the balance of said money into court, shall not prejudice any rights of the plaintiff herein, or her proceeding in this case, or any motion heretofore made or to be hereafter made in this case." This stipulation is not dated, but must have been entered into between March 26, 1898, and May 10, 1898. The $598.90 were accordingly deposited with the clerk. On May 10th Mrs. Doyle's attorneys served and filed notice that she relinquished all right to the fund represented by the draft "heretofore placed in her hands by D. M. Doyle, in the form of a New York draft, to wit, the sum of $748.90, for the purpose of retaining or holding until settlement with creditors of said D. M. Doyle & Son could be had—said money now being in the hands of the clerk of this court, less the sum of $150 heretofore paid over to Lizzie R. Doyle for the purpose of defraying funeral expenses, according to a certain stipulation heretofore filed—and hereby surrender the same to the receiver, Gregory Perkins, now assignee of estate of D. M. Doyle & Son." The court on May 28th indorsed on this notice the following order: "Upon foregoing stipulation, the clerk is hereby directed to pay over to the assignee or his attorney in said action the balance of the fund in his hands in said case." Again, on May 24, 1898, Mrs. Doyle's attorneys served and filed a notice, referring to the previous notice of renunciation, offering to surrender to the assignee all her right to the fund deposited with the clerk, to wit, "the sum of $598.48, or thereabouts, or any interest in any other property belonging to said insolvents." It also appeared that on the eighth day of June, 1898, the court entered judgment in the action brought by the receiver against Mrs. Doyle and her husband. In this judgment the court recited that Mrs. Doyle had turned over the $598.90, and that defendants had offered to confess judgment for $150 "on condition that plaintiff would amend his complaint by striking out certain portions thereof," and recited that plaintiff had accordingly so amended his complaint; but these stricken out portions are not stated or identified so as to enable us to point them out. Findings were waived, and the court adjudged that plaintiff recover $150 from defendant Lizzie R. Doyle, and costs, taxed at $25.50. The evidence adduced at that trial is not brought up. Mrs. Doyle filed her claim with the assignee for $1,634.46, which the assignee disallowed in his final report,

and excluded it from his account on the ground that Mrs.
Doyle had obtained a preference on account of said claim
within thirty days prior to the insolvency proceedings, in
violation of section 50 of the insolvency act.   At the hearing
the evidence referred to in the early part of this opinion,
relating to the money loaned by Mr. Doyle to the firm, was
submitted, and also the proceedings above set forth; and the
court ordered the assignee to amend his account by allowing
Mrs. Doyle's claim for $1,310.21, and directing that, from
the dividend to be paid her, the assignee deduct the amount
of the judgment and costs ($175.50) theretofore entered
against her.

Appellant's contention is that respondent received a prefer-
ence in violation of the insolvent act, and that she, as a cred-
itor, could not surrender the money received by her, and re-
ceive a dividend, unless such surrender was voluntarily made,
and not as the result of adversary proceedings instituted
by the assignee, and prosecuted to final judgment; citing nu-
merous cases, and Bump on Bankruptcy.   The evidence justi-
fied the court in holding that respondents acted in good faith
in taking the draft, and without any intention of defrauding
the other creditors.   Shortly after the receiver brought his
action, and some time before judgment, she surrendered all
the money received by her, except $150, which the evidence
tends to show she used for family purposes.   In that action,
however, the court gave judgment against her for this $150,
reciting therein that she had turned over to the clerk the bal-
ance received by her.   The court evidently, in view of the
stipulations and notices already referred to, and probably
in view of evidence at the trial of that action not now be-
fore us, acquitted respondent of all actual fraud in the mat-
ter, but held her liable under the insolvent act for constructive
fraud alone as to the money appropriated by her.   Having
turned over the money to the clerk, and he to the assignee,
some time before judgment, the court rightly, we think, held
her entitled to share as a creditor in the dividends, first
deducting from her share this $150.   Respondent was en-
titled, under the circumstances, to avail herself of the locus
poenitentiae at the time she did so, and she did not lose her
right to share in the dividends because she contested the as-
signee's claim to the $150.   We so understand the law, as
stated by Mr. Bump at the page of this author's book re-

ferred to by appellant, and we find nothing to the contrary in the cases cited by appellant. In view of all the facts, we think the orders of the trial court were supported by the evidence. They certainly were fair and just, and we advise their affirmance.

We concur: Haynes, C.; Gray, C.

PER CURIAM.—For the reasons given in the foregoing opinion the orders appealed from are affirmed.